UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re Subpoena in**<br><br>**DISTRICT OF COLUMBIA**<br><br>v.<br><br>**DESIREE ALI-FAIROOZ** | :<br>:<br>:<br>:   Misc. No. 08-MC-39<br>:   Judge Royce Lamberth<br>:<br>:<br>: |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO QUASH AND
IN SUPPORT OF CROSS-MOTION FOR REMAND TO D.C. SUPERIOR COURT**

**FACTUAL BACKGROUND**

On October 25, 2007, the District of Columbia charged Desiree Ali-Fairooz with disorderly conduct, in violation of 22 D.C. Code § 1321(1) (2001). Trial is scheduled for January 29, 2008, in courtroom 120 of the District of Columbia Superior Court. According to police reports, as Secretary of State Condoleezza Rice was entering Room 2172 of the Rayburn House Office Building, in preparation for her testimony before the House Foreign Affairs Committee, Ms. Ali-Fairooz approached Dr. Rice and yelled, "War criminal, you should be arrested." Ms. Ali-Fairooz was escorted from the room and arrested.

According to police reports, Dr. Rice was an eyewitness to Ms. Ali-Fairooz' alleged unlawful conduct. Indeed, Dr. Rice was the closest person to Ms. Ali-Fairooz at the time of the alleged offense. On November 27, 2007, undersigned counsel caused a subpoena to be served on Dr. Rice, requiring her to appear as a witness for the defense at Ms. Ali-Fairooz' trial. The subpoena was served via facsimile to the Office of the Executive Director of the Department of State. On November 29, 2007, undersigned counsel confirmed, via an email to Donna

RECEIVED
JAN 29 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Abruzzese at the Department of State, that Dr. Rice was being subpoenaed in her personal capacity, as a witness to Ms. Ali-Fairooz' alleged conduct. Undersigned counsel was later notified, via a letter dated January 8, 2008, that Dr. Rice did not intend to appear as a witness at trial on January 29, 2008. The United States, on behalf of Dr. Rice, then instituted this removal action.

## ARGUMENT

### I. REMOVAL WAS IMPROPER AND REMAND IS APPROPRIATE BECAUSE DR. RICE HAS NO FEDERAL DEFENSE TO ENFORCEMENT OF THE SUBPOENA.

Removal in this case was improper. The United States brought this removal action under 28 U.S.C. § 1442(a)(1), which permits removal of a civil action brought against a federal officer "for any act under color of such office . . ." The "under color of such office" requirement has been interpreted by the United States Supreme Court to permit removal only when the federal officer against whom the action has been brought has alleged a colorable federal defense. *Mesa v. California*, 489 U.S. 121, 135, 139 (1989) (holding that "Federal officer removal under 28 U.S.C. 1442(a) must be predicated upon averment of a federal defense."). Dr. Rice, a fact witness to an alleged crime, has no federal defense to enforcement of the subpoena.

The subpoena issued to Dr. Rice requires her to testify at a criminal trial as a strictly fact witness on behalf of Ms. Ali-Fairooz, as Dr. Rice was an eyewitness to the conduct Ms. Ali-Fairooz allegedly engaged in that gave rise to the charge of disorderly conduct. Accordingly, the subpoena was not issued to Dr. Rice "'under color' of the federal office," *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 413 (D.C. Cir. 1995), as required by § 1442(a)(1). In *Brown & Williamson*, cited by the government as authority for removal, removal was proper because the Speech and Debate Clause of the United States Constitution was averred as a

defense to enforcement of the subpoena *duces tecum* at issue in that case. *Id.* In this case, however, the government can allege no colorable federal defense to enforcement of the subpoena. In *Willingham v. Morgan*, 395 U.S. 402, 409 (1969), removal was proper because the relationship between the prisoner-plaintiff and prison officials-defendants, who were asserting federal official immunity as a defense to a tort action against them for assault, "derived solely from their official duties." Unlike in *Willingham*, the relationship between Dr. Rice and Ms. Ali-Fairooz derives from the fact that Dr. Rice was a witness to Ms. Ali-Fairooz' alleged criminal conduct. Because Dr. Rice is simply a fact witness to an alleged crime, whether or not Dr. Rice will be required to appear as a witness at trial is governed by District of Columbia law governing compulsory process. Thus, any potential defense to enforcement of the subpoena is grounded in District of Columbia law alone.

In addition, the relevance of *Brown & Williamson* is weakened by the distinctions between state courts and D.C. Superior Court. The subpoena *duces tecum* in *Brown & Williamson* was issued by a Kentucky state court. *Id.* at 411. The District of Columbia is a "state" court for the purposes of removal, 28 U.S.C. § 1451, but the District of Columbia is nevertheless "'constitutionally distinct from the States.'" *Dist. of Columbia Common Cause v. Dist. of Columbia*, 858 F.2d 1, 7 (D.C. Cir. 1988) (citing *Palmore v. United States*, 411 U.S. 389, 395 (1973)). For example, "although prisoners sentenced by state courts may resort to federal habeas corpus after exhaustion of their state remedies, a District of Columbia prisoner has no recourse to a federal judicial forum unless the local remedy is 'inadequate or ineffective to test the legality of his detention.'" *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986) (citing *Swain v. Pressley*, 430 U.S. 372 (1977)). Indeed, "[t]he measure of '[w]hether the District of Columbia constitutes a 'State or Territory' within the meaning of any particular . . .

constitutional provision depends upon the character and aim of the specific provision involved.'" *Adams v. Clinton*, 90 F.Supp.2d 35, 47 n.16 (D.D.C. 2000) (quoting *Dist. of Columbia v. Carter*, 409 U.S. 418, 420 (1973)). The dangers of forcing federal officers to litigate in D.C. Superior Court are limited, given that the court is in many ways a federal entity – it was created by Congress, it is funded by the federal government,[1] its judiciary is appointed by the President,[2] and its criminal cases are almost exclusively prosecuted by the United States.[3] In other words, the goal of § 1442 to protect federal officers from hostile state courts is not applicable in the unique, quasi-federal context of D.C. Superior Court.

Therefore, the purpose of the removal statute is not served by removal in this case. The Supreme Court has long recognized the purpose of 1442(a)(1):

> [The Federal Government] can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection, -- if their protection must be left to the action of the State court, -- the operations of the general government may at any time be arrested at the will of one of its members.

*Tennessee v. Davis*, 100 U.S. 257, 263 (1880). *See also Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981) ("The act of removal [pursuant to § 1442] permits a trial . . . free from local interests or prejudice."); *Willingham*, 395 U.S. at 405 ("Obviously, the removal provision [at 28

---

[1] The D.C. Superior Court was established by the District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 473 (1970), "pursuant to article I of the Constitution." *United States v. Harris*, 314 F.3d 608, 610 (D.C. Cir. 2002.) "Art. I, s. 8, cl. 17, of the Constitution provides that Congress shall have power '(t)o exercise exclusive Legislation in all Cases whatsoever, over' the District of Columbia . . . [and] Congress '. . . may vest and distribute the judicial authority in and among courts and magistrates, and regulate judicial proceedings before them, as it may think fit, so long as it does not contravene any provision of the constitution of the United States.'" *Palmore v. United States*, 411 U.S. 389, 398 (1973).

[2] Pursuant to D.C. Code § 1-204.33, the President nominates "and by and with the advice and consent of the Senate . . . appoint[s] all the judges of the District of Columbia courts."

[3] D.C. Code § 23-101(c) provides that aside from the small number of crimes prosecuted by the Attorney General's office in D.C. Superior Court, all criminal prosecutions "shall be conducted in the name of the United States by the United States Attorney for the District of Columbia. . . ."

U.S.C. § 1442(a)(1)] was an attempt to protect federal officers from interference by hostile state courts."). The Court's observation in *Davis* illustrates the disconnect between the purpose of § 1442(a) and removal in this case. The subpoena was not issued against Dr. Rice in this case due to any actions she took on behalf of the federal government or within the scope of her authority. She was simply a witness to an alleged crime. *See Willingham*, 395 U.S. at 409 n.4 (noting that "a more detailed showing" of the "'causal connection' between the charged conduct and asserted official authority" may be required in the context of a criminal case). Accordingly, the fear that the "government may at any time be arrested" if the subpoena against Dr. Rice is enforced is wholly absent from this case. *Davis*, 100 U.S. at 263.

The "color of office" requirement of § 1442(a)(1) has not been met and removal in this case does not further the purposes of the federal officer removal statute. This Court should therefore remand this matter to D.C. Superior Court.

## II. SHOULD THE COURT FIND THAT JURISDICTION LIES, THE MOTION TO QUASH SHOULD BE DENIED.

As an initial matter, undersigned counsel has sought to subpoena Dr. Rice in her personal, rather than her official capacity. Yet the government now argues that Dr. Rice has not been properly served in her personal capacity. *See* Motion to Quash at 5-6. Undersigned counsel caused the subpoena to be served on Dr. Rice, through the Department of State, as a courtesy and convenience to her. Since receiving the government's Motion to Quash, undersigned counsel has requested, via a telephone call and letter to the Department of State's Assistant Legal Adviser, that Dr. Rice be made available so that personal service can be effected. This request has been denied. In short, the government has denied Ms. Ali-Fairooz the ability to serve Dr. Rice in her personal capacity and then sought refuge in federal court on the ground that Dr. Rice has been served in her official capacity only. Nevertheless, whether this Court finds

that Dr. Rice has been served in her personal or her official capacity, it should deny the government's Motion to Quash.

### A. The Department of State's *Touhy* Regulations Do Not Provide Any Support for the Government's Motion to Quash.

The State Department's *Touhy* regulations, set forth at 22 C.F.R. § 172, like the *Touhy* regulations promulgated by numerous other federal agencies, simply set forth *internal* procedures for handling requests for information and testimony in connection with a proceeding to which the agency is not a party. These regulations provide no substantive protection from a subpoena ad testificandum; they simply establish *internal* procedures for federal agencies to follow to determine whether and how to respond to requests for disclosure of information.

The case from which *Touhy*-type regulations derive their name, *Touhy v. Ragen*, 340 U.S. 462 (1951), clarifies their limited objective. *Touhy* involved a subordinate federal actor, a special agent with the Federal Bureau of Investigation, who resisted a subpoena in a civil case in federal court at the direction of his superiors. The Court held the agent in contempt, and the agent appealed. The Supreme Court granted review and held that any contempt action should have been brought against the Attorney General. *Id.* at 467. The Court expressly did not "consider *the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order* the government papers in his possession." *Id.* (emphasis added). The Court explained that, "the case as we understand it raises no question as to the power of the Attorney General himself to make such a refusal." *Id.*[4] Thus, the Court's only holding in *Touhy* was that the Attorney General "can validly withdraw from his subordinates the power to release

---

[4] *See also id.* at 420 ("the constitutionality of the Attorney General's exercise of a determinative power as to whether or on what conditions or subject to what disadvantages to the Government he may refuse to produce government papers under his charge must await a factual situation that requires a ruling."); *id.* at 472 (emphasizing the Court's "very narrow ruling" and explicitly warning that "*this case cannot afford a basis for future suggestion that the Attorney General can forbid every subordinate who is capable of being served by process from producing relevant documents.*") (Frankfurter J., concurring).

6

department papers," so as to promote uniformity in determining when the government will comply with a subpoena and when it will resist a request for disclosure of information. *Id.*

In the fifty years since *Touhy*, courts have honored its "very narrow ruling" and repeatedly observed that *Touhy*-type regulations do not create an independent privilege authorizing federal agencies to withhold information from disclosure. *See, e.g., Alexander v. United States*, 186 F.R.D. 66, 70 (D.C. Cir. 1998); *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994); *F.A.C. Inc., v. Cooperativa De Seguros de Vida*, 188 F.R.D. 181, 185-86 (D.P.R. 1999); *United States v. Peitz*, 2002 WL 453601, *3 (N.D.Ill. 2002); *cf. In re Cys*, 362 A.2d 726, 728 n.3 (D.C. 1976) (noting that an Assistant United States Attorney cited with criminal contempt by a D.C. Superior Court Judge for failure to disclose information had not sought to obtain approval from his superiors as mandated by the Department of Justice *Touhy* regulations, but instead "chose to stand on a refusal to produce, possibly interpreting the regulations as an absolute prohibition against release" of the requested information). The D.C. Court of Appeals' decision in *Houston Business Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208 (D.C. Cir. 1996), is not to the contrary. Rather, in that case, the Court simply held that "a court cannot enforce a subpoena against an employee of the federal governmental agency when the agency has validly enacted a regulation . . . that withdraws from employees the power to produce documents." *Id.* at 1212. Instead, any enforcement action must be taken against the head of the agency. *Id.*

Moreover, since the Supreme Court's decision in *Touhy*, Congress has made expressly clear that *Touhy* regulations provide federal agencies no substantive protection from their obligations to disclose information. Federal *Touhy* regulations are authorized by the federal "Housekeeping Statute," 5 U.S.C. § 301, which simply provides that a "head of an Executive

department . . . may prescribe regulations for the government of his department, conduct of his employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers and property." In 1958, Congress amended the Housekeeping Statute and added the following caveat: "This section does not authorize withholding of information from the public or limiting the availability of records to the public." 5 U.S.C. § 301.

Finally, the D.C. Court of Appeals has held, in *Christian v. United States*, 394 A.2d 1, 44 (D.C. 1978), that the Federal All Writs Act permits Superior Court judges to issue writs of mandamus outside of the District to federal actors. This provides a clear form of authority for Superior Court judges to enforce their subpoenas against recalcitrant federal actors. In short, *Touhy* regulations give the Department of State a procedure to follow to make reasoned and uniform decisions with respect to demands for testimony. But they pose no bar to the enforcement of a subpoena ad testificandum issued by the D.C. Superior Court.

### B. Whatever their Application, *Touhy* Considerations Cannot Trump Ms. Ali-Fairooz' Fifth Amendment Right to Due Process and Sixth Amendment Right to Compulsory Process.

Completely absent from the government's motion is any appreciation that Ms. Ali-Fairooz seeks the testimony of Dr. Rice in the context of a criminal case, as a means of substantiating her defense. It is not at all clear that *Touhy* considerations even apply in the criminal context, and the government, which relies exclusively on authority from the civil sphere, cites no authority to demonstrate that they do.

The Supreme Court in *Touhy* cited approvingly to *United States v. Andolschek*, 142 F.2d 503 (2d Cir. 1944), where the Second Circuit held, in a criminal case, that the government had improperly failed to produce requested information. As Judge Learned Hand explained,

> While we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies between third

8

> persons, *we cannot agree that this should include their suppression in a criminal prosecution*, founded upon those very dealings to which the documents relate, and *whose criminality they will, or may, tend to exculpate.* So far as they directly touch the criminal dealings, the prosecution necessarily ends any confidential character the documents may possess; it must be conducted in the open, and will lay bare their subject matter. The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully. Nor does it seem to us possible to draw any line between documents whose contents bears directly upon the criminal transactions, and those which may be only indirectly relevant. Not only would such a distinction be extremely difficult to apply in practice, but the same reasons which forbid suppression in one case forbid it in the other, though not, perhaps, quite so imperatively. We hold that the regulation should have been read not to exclude the reports here in question.

*Id.* at 506 (emphasis added).

Thus, when taken out of their original civil context and applied in the distinct sphere of criminal prosecutions, *Touhy* considerations pose special challenges. To the extent the procedural requirements of *Touhy* alert the government in a criminal prosecution to the nature of the defense, they violate due process by failing to provide reciprocal discovery. *See United States v. Bahamonde*, 445 F.3d 1225 (9th Cir. 2006) (rejecting the application of *Touhy* regulations in a criminal case where the defendant sought testimony from a DHS agent). As the court in *Bahamonde* acknowledged, "'[i]t is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.'" *Id.* at 1229 (quoting *Wardius v. Oregon*, 412 U.S. 470, 476 (1973)). This is particularly true in the District of Columbia, where the defense has minimal access to discovery and thus minimal knowledge of the factual basis of the government's case prior to trial.

But even if *Touhy* regulations have some application in the context of a criminal prosecution, these considerations do not trump and cannot interfere with the mandates of the Constitution. Ms. Ali-Fairooz has inviolable rights under the Fifth Amendment to Due Process

9

and under the Sixth Amendment to a fair trial and to the presentation of a defense. *See Chambers v. Mississippi*, 410 U.S. 284 (1973). In aid of those rights, Ms. Ali-Fairooz has a right to confront and cross-examine the witnesses against her, as well as a right to compulsory process. *Pointer v. Texas*, 380 U.S. 400 (1973); *Washington v. Texas*, 388 U.S. 14 (1967).

With respect to this last right, the Supreme Court made clear over thirty years ago that a general assertion of executive privilege does not trump the right to compulsory process and that a trial court in a criminal case has an affirmative and "manifest duty" to protect this right from executive suppression. *See United States v. Nixon*, 418 U.S. 683 (1974).

> When the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice. The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial.

*Id.* at 713. *See also Clinton v. Jones*, 520 U.S. 681, 705 (1997) (noting that "President Clinton has twice given videotaped testimony in criminal proceedings"); *United States v. Poindexter*, 732 F.Supp. 142 (D.D.C. 1990) (upholding a subpoena requiring former President Reagan to testify during a criminal trial, after observing that former presidents had been required to comply with subpoenas in the past). *See generally* Milton Hirsch, *"The Voice of Adjuration": The Sixth Amendment Right to Compulsory Process Fifty Years After United States v. Ex Rel. Touhy v. Ragen*, 30 Fl. St. U. L. Rev. 81 (Fall 2002).

In *Buford v. State*, 282 S.E.2d 134 (Ga. App. 1981), the Georgia Court of Appeals reversed a conviction after the trial court allowed an FBI agent to resist a state court subpoena. Quoting *Nixon*, 418 U.S. at 712, the appellate court observed that, "the allowance of the [asserted executive] privilege to withhold evidence that is demonstrably relevant in a criminal trial would

cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." *Buford*, 282 S.E.2d at 137.

Thus, the cases cited by the government in support of its argument that Dr. Rice's appearance at trial would be contrary to the public interest are inapposite because they are all cases that grew out of a private, civil context. *See* Motion to Quash at 8-10. For example, the government cites *Capitol Vending Co. v. Baker*, 36 F.R.D. 45 (D.D.C. 1964), for the proposition that the public interest would be harmed by enforcement of the subpoena in this case because,

> '[i]f the head of a government agency were subject to having his deposition taken concerning any litigation affecting his agency or any litigation between private parties which may indirectly involve some activity of the agency, we would find that the heads of government departments and members of the President's Cabinet would be spending their time giving depositions and would have no opportunity to perform their functions.'

Motion to Quash at 9-10 (quoting *Capitol Vending*, 36 F.R.D. at 46). Again, the Department of State is not at issue here; Dr. Rice's testimony as a fact witness to an alleged crime is being sought. In addition, the Fifth and Sixth Amendments provide compelling reasons to require the presence of a fact witness at trial, but these consideration are entirely absent from the government's analysis of whether enforcement of the subpoena would further the public interest. "Criminal proceedings, unlike private civil proceedings, are public acts initiated and controlled by the Executive Branch . . . and ordinarily they put at risk, not a private citizen's hope for monetary compensation, but a private citizen's freedom from enforced confinement. *Clinton*, 520 U.S. at 718 (Breyer, J., concurring).

The government cites just two criminal cases, *Bardoff v. United States*, 628 A.2d 86 (D.C. 1993), and *Harris v. United States*, 834 A.2d 106 (D.C. 2003), each of which was decided by the D.C. Court of Appeals, for the proposition that the Compulsory Process Clause does not require Dr. Rice, a "high government official[]," to testify at trial. *See* Motion to Quash at 8.

The court in *Harris* reversed a conviction on Sixth Amendment grounds where the trial court had refused to enforce a subpoena, holding that the fact witness whose testimony was being sought would have been favorable and material to the defense, though corroborative. *Harris*, 834 A.2d at 125. In *Bardoff*, meanwhile, the court affirmed the trial court's decision to quash subpoenas that had been issued to several federal officials because the defense was unable to explain why the testimony it sought would have been favorable and material. *Bardoff*, 628 A.2d at 92-93. That is exactly the question to be decided by the D.C. Superior Court upon remand, guided by District of Columbia law, after that court has had the opportunity to consider a proffer, made *ex parte* of course, by the defense, if required, to satisfy its burden to demonstrate materiality. *See Ventura v. United States*, 927 A.2d 1090, 1101 (D.C. 2007) (recognizing the use of an *ex parte* bench conference when trial counsel is required to articulate a defense theory, in order to "preserve the integrity of defense counsel's trial strategy."); *Bowman v. United States*, 412 A.2d 10 (D.C. 1980) (finding no authority to support the proposition that "a trial court has the power to compel the defendant to divulge his defense before trial.").

### C. Sovereign Immunity Does Not Insulate Dr. Rice from Testifying in this Case.

The government argues that under *Sharon Lease Oil Co. v. Fed. Energy Reg. Comm'n*, 691 F.Supp. 381 (D.D.C. 1988), sovereign immunity extends to Dr. Rice. However, that case, again arising out of a private civil suit, rather than a criminal prosecution, is inapposite. The court in *Sharon Lease* wrote,

> That subpoena will operate against FERC in that Kilchrist will be compelled to appear for a deposition in his official capacity, testify about FERC matters obtained by Kilchrist while acting as a FERC employee, and produce FERC documents. No argument has been made that Kilchrist is being sought to testify as to personal matters or to produce personal notes or documents.

*Id.* at 383. Again, this case does not present any of the concerns that factored into the court's decision in *Sharon Lease*. Dr. Rice is not being compelled to testify in her official capacity about State Department matters; she was a witness to an alleged crime. Rather, she is being sought to testify purely as a fact witness in her personal capacity. The government's assertion that sovereign immunity extends to Dr. Rice because she is being compelled "to testify about matters intertwined with her job duties and responsibilities," Motion to Quash at 5, is simply untrue.

## CONCLUSION

Wherefore, for the foregoing reasons and any others that may appear to the Court, the government's Motion to Quash should be denied and the matter should be remanded to D.C. Superior Court.

Respectfully submitted,

_____
John Copacino, D.C. Bar #289595
On Behalf of Desiree Ali-Fairooz
Georgetown University Law Center
111 F Street, NW
Washington, D.C. 20001
202-662-9577 (phone)
202-662-4224 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law in Support of Opposition to Motion to Quash and in Support of Cross-Motion for Remand to D.C. Superior Court was delivered by hand to AUSA Rhonda C. Fields, Office of the United States Attorney, Civil Division, 555 Fourth Street, NW, Washington, D.C. 20530, on this 29th day of January, 2008.

_____
John Copacino

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re Subpoena in** : | |
| : | |
| **DISTRICT OF COLUMBIA** : | **Misc. No. 08-MC-39** |
| v. : | |
| : | |
| **DESIREE ALI-FAIROOZ** : | |
| _____: | |

## ORDER

Upon consideration of the Motion to Quash filed by the Office of the United States Attorney and the Opposition to Motion and Cross-Motion for Remand to D.C. Superior Court filed on behalf of Desiree Ali-Fairooz, it is this \_\_\_\_\_ day of _____, 2008, hereby

ORDERED that the Motion to Quash shall be and is hereby denied and the matter remanded to D.C. Superior Court.

_____
The Honorable Royce Lamberth

Copies to:

John Copacino
Georgetown University Law Center
111 F Street, NW
Washington, D.C. 20001
202-662-9577 (phone)
202-662-4224 (fax)

Rhonda C. Fields
Assistant United States Attorney
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
202-514-6970 (phone)
202-514-8780 (fax)