UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Subpoena in | ) |
| | ) |
| DISTRICT OF COLUMBIA | ) |
| v. | ) Miscellaneous No.  08-39 (RCL) |
| DESIREE ALI-FAIROOZ | ) |
| | ) |

**REPLY TO OPPOSITION TO MOTION TO QUASH AND
OPPOSITION TO CROSS-MOTION FOR REMAND TO SUPERIOR COURT**

The United States Attorney for the District of Columbia, on behalf of the Secretary of State, respectfully submits this Reply to defendant Ali-Fairooz's opposition to the motion to quash and Opposition to defendant  Ali-Fairooz's cross-motion for remand to Superior Court.

**I.     Removal of the Subpoena is Proper Because the Secretary Has Alleged a Colorable Federal Defense**

Defendant Ali-Fairooz contends that removal under 28 U.S. C. § 1442(a)(1) was improper because the Secretary of State has no federal defense to enforcement of the subpoena. However, she completely ignores the multiple federal defenses asserted by the Secretary of State in this case, including sovereign immunity -- Motion to Quash (MQ) at p. 4;  failure to comply with federal regulatory requirements (the State Department's *Touhy* regulations)*,* and failure to obtain authorization for the Secretary's testimony pursuant to such regulations --  MQ at pp. 7-8; the federal Supremacy Clause -- MQ at p. 10; and the federal interest in avoiding unnecessary disruption to the operations of the United States Government -- MQ at p. 6-7, 9-10.  The notice of removal in this case also clearly alleges that "Secretary Rice will move to quash the subpoena, **relying on federal law**."  Notice of Removal at p.  1-2.

The precedents cited by both the government and the defendant make clear that these federal defenses need only be colorable to warrant removal.  In *Brown & Williamson Tobacco*

*Corp. v. Williams,* the D.C. Circuit noted that

> [b]y its terms, then, the statute confers removal jurisdiction over either a state court "civil action" or "criminal prosecution" brought "against" a federal official-as long as the "action" for which he is being questioned was undertaken "under color" of the federal office.   This last condition has long been interpreted to require "that federal officer removal must be predicated **on the allegation of a colorable federal defense.**" *Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct. 959, 965, 103 L.Ed.2d 99 (1989).

*Brown & Williamson Tobacco Corp. v. Williams*,  62 F.3d 408, 413  (D.C.Cir.1995)(emphasis added).  Indeed, the Supreme Court has specifically held that the District Court has removal jurisdiction even  if only one of the defenses alleged is federal, and apart from the question of whether the federal defense is valid.

> "Nor is it any objection that questions are involved which are not all of a Federal character. If one of the latter exist, if there be a single such ingredient in the mass, it is sufficient. That element is decisive upon the subject of jurisdiction." 6 Wall., at 252 (emphasis added). **For purposes of removal,** we only required the mayor and aldermen **to allege a colorable defense under federal law**; "[t]he validity of the defense authorized to be made is a distinct subject.  It involves wholly different inquiries.... It has no connection whatever with the question of jurisdiction." *Id*., at 254.

*Mesa v. California*,  489 U.S. 121, 129 (1989).

The Supreme Court has further "insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1) .'" *Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir. 1986) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).)  The Court's instruction reinforces the longstanding purpose of § 1442(a)(1), which is "to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Manypenny*, 451 U.S. at 241.  The Court has specifically recognized that only federal courts may decide issues pertaining to sovereign immunity, stating that "one of the most

2

important reasons for removal is to have the validity of the defense of official immunity tried in federal court. . . . In cases like this one, Congress has decided that federal officers . . . require the protection of a federal forum." *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969).

In an analogous case, *Swett v. Schenk*, 792 F.2d at 1450, the Ninth Circuit upheld a National Transportation Safety Board (NTSB) investigator's removal of a contempt proceeding to district court although the appellant had contested removal, arguing that no causal connection existed between the charged conduct – contempt for failing to answer certain questions at trial – and the asserted official authority – NTSB regulations that barred the investigator from answering the questions that led to his citation for contempt. The Ninth Circuit rejected this argument, stating that the investigator's claim that NTSB regulations prevented him from answering certain questions was "all the causal connection" required to effect removal. *Id*. Likewise, removal was proper in this case because the Secretary of State raised a colorable claim under § 1442(a)(1) that the state court subpoena seeks official information, the disclosure of which the Department of State (the Department) denied pursuant to its governing regulations and which the state court cannot compel by virtue of the Supremacy Clause, U.S. Const., art. VI, cl.2, and sovereign immunity. Therefore, there is no question that the Secretary of State has asserted a colorable defense to the enforcement of the subpoena under federal law, and the matter has been properly removed to federal court.

Contrary to defendant's arguments, the fact that the underlying case here is in D.C. Superior Court is of no moment. The definitional section corresponding to § 1442(a)(1) clearly states that "The term 'State court' includes the Superior Court of the District of Columbia," and that the term "State" includes the District of Columbia. 28 U.S.C. § 1451 (1)-(2). This Court has

consistently recognized that the Superior Court is a state court for purposes of removal jurisdiction and the sovereign immunity defense to Superior Court subpoenas. *See, e.g., Santini v. Herman*, 456 F.Supp. 2d 69 (D.D.C. 2006); *Environmental Enterprises, Inc. v. EPA*, 664 F.Supp. 585 (D.D.C. 1987); *Sharon Lease Oil Co. v. FERC*, 691 F.Supp. 381 (D.D.C. 1986). In light of 28 U.S.C. § 1451 (1)-(2) , it would of course be anomalous that removal would be available to federal officials sued or subpoenaed in State courts across the country but would not be available to them in misdemeanor cases here in the District of Columbia, where many of the most senior federal officials engage in their official duties. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent."); *Blackman v. District of Columbia*, 456 F.3d 167, 176 (D.C.Cir. 2006).

## II.    The Motion to Quash should be Granted

Because the defendant has failed to comply with the Department's *Touhy* regulations, the Superior Court and this court lack jurisdiction to enforce the subpoena to the Secretary of State. Defendant mistakenly focuses on a purported distinction between personal and official capacity matters, seemingly believing that attempting to issue a subpoena to Secretary Rice "in her personal capacity" and asserting that this is a personal matter circumvents sovereign immunity and any agency limitations on the disclosure of official information.[1] Opposition at 5. This

---

[1] Defendant does not deny, and thus concedes, that she failed to effect personal service of her subpoena ad testificandum on Dr. Rice in her personal capacity as is required by Rule 17 of the D.C. Superior Court Criminal Rules of Procedure. Rather, she served the Department of State, and the Department accepted service for Secretary Rice in her official capacity only. MQ at Enclosure 1. Pursuant to its governing regulations, set forth in 22 C.F.R. §172, the Department of State may only accept service of subpoenas directed to individual employees that seek information an employee acquired in the course and scope of performance of official duties.

argument is incorrect as a matter of fact and law.

First, as a factual matter, the defendant clearly seeks information gained by the Secretary in the course of performing her official duties, such that the Department's *Touhy* regulations govern the release of the information regardless of the capacity in which the employee's testimony is sought. *See* 22 C.F.R. § 172. Official information is defined as:

> all information of any kind, however stored, that is in the custody or control of the Department, relates to information in the custody and control of the Department, or was acquired by Department employees as part of their official duties or because of their official status within the Department while such individuals were employed by or served on behalf of the Department.

22 C.F.R. § 172.1(d). Department employees, including the Secretary of State, may not provide oral or written testimony concerning official information unless authorized to do so under the Department's *Touhy* regulations. 22 C.F.R. § 172.4, 172.1(b). *See United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951).

As set forth in the Department's administrative decision and the Motion to Quash, any information Secretary Rice possesses concerning the events at issue in this case was obtained solely pursuant to the exercise of her official duties and accordingly is official information within the meaning of the Department's *Touhy* regulations. MQ at Enclosure 5 at p. 4, MQ at pl 4. As the State Department's administrative decision found, and which defendant does not deny, and thus concedes[2],

---

22 C.F.R. §172.3. Therefore, if the Court were to conclude that the information sought is not official Department information, service of the subpoena would be ineffective, and the motion to quash should be granted on that basis.

   [2] *Hooker-Robinson v. Rice,* 2006 WL 508343, *3 (D.D.C. 2006)("Because the plaintiff only addressed some of the defendant's challenges in her response, the Court will consider those challenges not addressed by the plaintiff in her response as conceded."); *accord*, *Matta v. Snow*,

> the Secretary witnessed the events at issue in this case while she was at the Rayburn House Office Building to give testimony before a Congressional committee in her official capacity as Secretary of State.

MQ at Enclosure 5 at p. 4. It appears that defendant caused a disturbance before the House Foreign Affairs Committee while in protest of official Department and U.S. government policies and because of the Secretary's official status. *See* defendant's Memorandum in Opposition at p. 1 ("According to police reports . . .[defendant] approached Dr. Rice and yelled, "War criminal, you should be arrested."). Any information Secretary Rice received concerning this matter was obtained in pursuance of her official duties, by virtue of her official status, and by federal regulation is official Department information the disclosure of which is governed by the Department's *Touhy* regulations.

Second, as a legal matter, this court cannot enforce a state court subpoena where the defendant has failed to comply with the Department's valid *Touhy* regulations, and the Department has in any event reasonably denied the defendant's request for testimony on the merits. Defendant does not deny, and thus concedes, that she failed to comply with the Department's *Touhy* regulations. Even though invited to submit additional information for the Department's consideration of her subpoena, she refused to "set forth in writing, with as much specificity as possible, the nature and relevance of the official information sought" as is required by 22 C.F.R. § 172. *See* MQ at p. 7 and at Ex 3 and 4. This refusal alone should be a basis to quash the subpoena.[3]

---

2005 WL 3454334, *23 (D.D.C.2005).

[3] In fact, it appears that defendant never intends to reveal to the Department the basis for her alleged specific need for Secretary Rice's testimony. *See* Opposition at p.12 (the defendant expects to make her proffer of materiality ex parte).

Nonetheless, pursuant to its *Touhy* regulations, the Department of State considered the defendant's request for testimony on the merits based on the information available to it and issued a final agency decision denying defendant's request. The Department reasonably concluded that

> In light of the public nature of the events at issue in this case, the existence of professional audio/video recordings of these events, and the availability of numerous other eye-witnesses, and taking into account the need to conserve the time of the Secretary to conduct foreign affairs on behalf of the United States and attend to other official business, we have concluded that requiring the Secretary of State to testify in this case would be unduly burdensome, inappropriate and not in the public interest. It would adversely affect the mission of the Department of State for the Secretary to be distracted from carrying out her important duties because she is required to appear and testify for no compelling purpose.

MQ at Enclosure 6 at p. 5.

Under these circumstances, the defendant's subpoena must be quashed and her only appeal lies in a separate federal court action under the APA. As this Court explained in *Santini v. Herman*, 456 F.Supp.2d 69, 71 (D.D.C. 2006):

> Neither the Superior Court nor this Court has jurisdiction to enforce a Superior Court subpoena when the party seeking enforcement has failed to comply with an agency's Touhy regulations. *See United States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) . . . In state court, sovereign immunity shields the federal government, thereby preventing the state court from enforcing a subpoena. *Houston Business Journal v. OCC*, 86 F.3d 1208, 1211 (D.C.Cir.1996). Further, "because a federal court's jurisdiction upon removal is derivative of the state court's, the federal court in a removed action is also barred from enforcing a subpoena against the federal government." *Id*. at 1212. Moreover, a court cannot enforce a subpoena against a federal agency employee when the agency has enacted valid *Touhy* regulations. *Id*. (*citing Touhy*, 340 U.S. at 467-69, 71 S.Ct. 416). When an agency has enacted *Touhy* regulations, the litigant must proceed under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. ("APA"), and the federal court will review any agency decision not to permit its employee to testify under an arbitrary and capricious standard. *Houston Business Journal*, 86 F.3d at 1212 n. 4; *accord Ho v. United States*, 374 F.Supp.2d 82, 83 (D.D.C.2005), appeal dismissed, No. 05-5319, 2006 WL

1675318 (D.C.Cir.2006). Whether a plaintiff seeks testimony or the production of documents from an agency, she must comply with the agency's *Touhy* regulations. *Yousuf v. Samantar*, No. 05-ms-110, 2005 WL 1523385, *5 n. 9 (D.D.C. May 3, 2005), rev'd and remanded on other grounds, 451 F.3d 248 (D.C.Cir.2006).

Defendant attempts to blur the distinction between State and Federal court matters and matters in which the United States is the prosecuting party. Like this Court, the D.C. Circuit clearly recognizes the difference:

> When a litigant seeks to obtain documents from a non-party federal governmental agency, the procedure varies depending on whether the underlying litigation is in federal or in state court. In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena. Under Fifth Circuit law, which the Texas district court followed, because a federal court's jurisdiction upon removal is derivative of the state court's, the federal court in a removed action is also barred from enforcing a subpoena against the federal government. *Louisiana v. Sparks*, 978 F.2d 226, 234-36 (5th Cir.1992). Moreover, a court cannot enforce a subpoena against an employee of the federal governmental agency when the agency has validly enacted a regulation, such as 12 C.F.R. § 4.19 (1995), that withdraws from employees the power to produce documents. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467-69, 71 S.Ct. 416, 419-20, 95 L.Ed. 417 (1951); *id*. at 472-73, 71 S.Ct. at 421-22 (Frankfurter, J., concurring). Thus, a state-court litigant must request the documents from the federal agency pursuant to the agency's regulations, as indeed the Journal did. If the agency refuses to produce the requested documents, the sole remedy for the state-court litigant is to file a collateral action in federal court under the APA. *See Edwards*, 43 F.3d at 314; *In re Boeh*, 25 F.3d at 764 n. 3.

*Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dept. of Treasury*, 86 F.3d 1208, 1211-1212 (D.C.Cir.1996). *See also Watts v. SEC*, 482 F.3d 501, 509 n.1 (D.C. Cir. 2007) ("In general, state court subpoenas present entirely different issues [from federal court subpoenas] (because of the Supremacy Clause and sovereign immunity), and a state court litigant's only recourse from a federal agency's refusal to comply with a state court subpoena is to bring an APA claim . . . against the agency in federal court.")(parenthetical in original).

>The Fourth Circuit has also accurately summarized the law requiring this result:
>
>The assertion of state court authority to override the [agency's] Touhy regulations clearly violates the Constitution's Supremacy Clause.  First, Congress has expressly limited Administrative Procedure Act review to the federal courts, and a state court's assertion of the power of judicial review over federal agencies directly contravenes 5 U.S.C. § 702.  Second, properly promulgated agency regulations implementing federal statutes have the force and effect of federal law which state courts are bound to follow.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979).  The action of a state court to compel an official of a federal agency to testify contrary to the agency's duly enacted regulations clearly thwarts the purpose and intended effect of the federal regulations.  Such action plainly violates both the spirit and the letter of the Supremacy Clause.

*Boron Oil v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989).  Thus, to the extent defendant should wish to challenge the Department's administrative decision, she must do so in a separate proceeding under the APA.  *See Houston Business Journal*, 86 F.3d at 1212.

The All Writs Act does not expand the jurisdiction of the D.C. Superior Court.  The issue in *Christian v. United States*, 394 A.2d 1, 44 (D.C.1978), cited by defendant, was the Superior Court's power to issue a writ of habeas corpus for a prisoner incarcerated in another State for a Superior Court Grand Jury.  That case held:

>We conclude that **in Aid of its authorized jurisdiction**, the Superior Court may issue extraterritorial writs.  **It is elementary that the All Writs Act does not supply or expand the jurisdiction of the court,** but serves only to confer power to issue writs where the court's jurisdiction otherwise exists. . . .The authority to issue writs ad testificandum extraterritorially has been presumed to be a necessary aid to and coextensive with the court's jurisdiction to issue nationwide subpoenas.

*Id.*, 394 A.2d at 45 (emphasis added).  The issue in the instant case is not whether the Superior Court has the power to issue a writ or a subpoena.  The issue is whether or not, having done so, it has the jurisdiction to force Secretary Rice to testify under peril of contempt.  The All Writs

9

Act simply does not expand the subpoena jurisdiction of the Superior Court to federal officials invoking federal defenses.

Defendant relies on cases pertaining to federal criminal prosecutions to contend that the Department's regulations' procedural requirements somehow offend her Due Process rights under the Fifth and Sixth Amendments. *See* Opposition at p. 8-9. All of the federal cases cited by defendant stand for the unremarkable proposition that federal rules of criminal procedure, and due process requirements, require the United States to disclose pertinent information when the United States criminally prosecutes an individual. *U.S. v. Andolschek*, 142 F.2d 503, 506 (2nd Cir. 1944), cited by defendant, was a *federal* conspiracy prosecution of inspectors of the Internal Revenue Service. *Id.,* 142 F.2d at 504. Relying on a *Touhy* regulation, the district court had excluded certain reports made in the course of official duties which were relevant to the defendants' interactions with individuals who were alleged to have bribed them. The Second Circuit held that the United States government could not both pursue the prosecution and withhold relevant evidence – a simple *Brady* concept. *Id.,* 142 F.2d at 506. ("The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully."). The case explicitly distinguished between that federal prosecution and controversies between third parties such as that between defendant and the District of Columbia. As to matters where the United States was not the prosecutor, the court stated "we must accept it as lawful for a department of the [federal] government to suppress documents, even when they will help determine controversies between

third persons . . . ." *Id.* 142 F.2d at 506. *United States v. Nixon*, 418 U.S. 683 (1974), and the other federal cases cited, also dealt with federal subpoenas and federal prosecutions.[4]

However, unlike in those cases, the United States is not the prosecuting authority here. The prosecuting authority is a different sovereign – the District of Columbia. Neither has the defendant presented any evidence that the Department of State is "closely aligned" with the State prosecution. *See United States v. Brooks*, 966 F.2d 1500, 1502-03 (D.C.Cir. 1992) ("the government" for purposes of the *Brady* doctrine and discovery in criminal cases is limited to the "branches of government closely aligned with the prosecution.") (internal quotation omitted); *accord, e.g. ,United States v. Libby*, 429 F. Supp. 2d 1, 5-7 (D.D.C. 2006). *See generally Fyles v. Whitley*, 514 U.S. 419, 437 (1995). Thus, there simply is no "reciprocal discovery" issue. Furthermore, contrary to defendant's assertion, courts routinely recognize the doctrine of sovereign immunity to protect federal employees from compelled testimony in state court criminal proceedings. *See e.g. In re Neagle*, 135 U.S. 1 (1890); *Arizona v. Manypenny*, 451 U.S. 232 (1981); *FBI v. Williams*, 170 F.3d 431 (4th Cir. 1999); *Kasi v. Angelone*, 300 F.3d 487 (4th Cir. 2002); *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967); *Edwards v. Dept. of Justice*, 43 F.3d 312 (7th Cir. 1994); *FBI v. Superior Court of California*, 507 F.Supp. 2d 1082 (N.D. Cal. 2007); *United States v. Guild*, 2008 WL 134562 (E.D. Va. 2008). To the extent that defendant may claim that the absence of the Secretary of State's testimony unfairly prejudices her defense, that is of course an argument she is free to raise in D.C. Superior Court and that the

---

[4] Moreover, as is discussed below, even when the United States is the prosecutor in Superior Court, agencies not closely aligned with the prosecution may rely upon *Touhy* in response to subpoenas issued by a defendant.

Superior Court can address as it sees fit, within its jurisdiction. *Harris v. U.S.*, 834 A.2d 106, 128 (D.C. 2003).

In any event, it is firmly established that more than a mere absence of testimony is required to trigger a defendant's right to compulsory process. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Instead, a defendant must establish that the testimony sought would be relevant, material, and vital to the defense. *Id.* (also noting that the Sixth Amendment guarantees compulsory process only for obtaining *favorable* witnesses).

Here, defendant has neither alleged nor proffered any evidence or argument of prejudice to her defense that would trigger a violation of the Due Process clause. *See Valenzuela-Bernal*, 458 U.S. at 867. While defendant states that "Ms. Ali-Fairooz has inviolable rights under the Fifth Amendment to Due Process and under the Sixth Amendment to a fair trial and to the presentation of a defense," defendant makes no proffer as to how quashing this subpoena would violate those rights. Opposition at 9-10. Defendant has not suggested that Secretary Rice's testimony would be favorable to the defense, as required to trigger the Sixth Amendment right to compulsory process, nor has defendant made any showing that Secretary Rice's testimony would be material to the defense. Defendant states only that Dr. Rice's testimony is sought "in the context of a criminal case, as a means of substantiating her defense . . . a fact witness to an alleged crime" and contends that she has a right to make a showing of materiality in Superior Court. Opposition at 8-9. Defendant hereafter has a right to make any proffers she wishes to the Superior Court in matters within that court's jurisdiction. However, defendant has failed to make any such showing to this Court -- which has jurisdiction over this motion to quash -- and therefore has conceded the issue on the motion to quash.

The absence of any proffer is particularly telling in light of the public forum in which the alleged events took place, the numerous other witnesses to the alleged events, and the wide availability of professional audio and video recordings of the event. Secretary Rice's testimony could only be cumulative of this evidence and therefore is not essential to the prevention of prejudice or injustice in the misdemeanor disorderly conduct case. *See, e.g. Bardoff v. United States*, 628 A.2d 86 (D.C. 1993) (quashing subpoenas issued by protesters to Senators because not necessary to defense, and there was sufficient evidence available from other sources – video and many other individuals present at hearing). It is against this backdrop that the Department concluded that requiring the Secretary of State to testify in Defendant's case would be unduly burdensome, inappropriate, against the public interest, and would adversely affect the mission of the Department of State because it would require the Secretary to be distracted from carrying out her important duties to appear and testify for no compelling purpose. Motion to Quash at Enclosure 5 at p. 5.

This is exactly the type of inadequate proffer recently rejected in *United States v. Guild*, 2008 WL 134562 (E.D. Va. Jan. 9, 2008), in which the court denied the defendant's motion to subpoena two ambassadors because he had not made a prima facie showing that the ambassadors' testimony would be relevant and favorable to the defense. *Id*. at *4. In denying the request, the court noted that "Defendant's proffer of [Ambassador Taylor's] testimony is speculative, at best." *Id*. It went on to reason that "Defendant has not shown that this testimony would be both exculpatory and non-cumulative, and thus has not fulfilled the requirement of materiality. Similarly, the only proffered testimony of Ambassador Herbst is that he "will provide testimony relating to Mr. Guild's 'reputation and character,' an explanation which

likewise fails to meet the materiality requirement." *Id*. Accordingly, Defendant's unsubstantiated assertion that granting the Motion to Quash would violate her Fifth and Sixth Amendment rights to due process should be rejected.

## CONCLUSION

Therefore, defendant Ali-Fairooz's cross motion for remand to D.C. Superior Court should be denied, and the Secretary's motion to quash should be granted.

        Respectfully submitted,

        _____/s/_____
        JEFFREY A. TAYLOR, D.C. Bar #498610
        United States Attorney

        _____/s/_____
        RUDOLPH CONTRERAS, D.C. Bar # 434122
        Assistant United States Attorney

        _____/s/_____
        RHONDA C. FIELDS
        Assistant United States Attorney
        Civil Division
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        202/514/6970
        fax: 202/514/8780

OF COUNSEL:

JOHN B. WIEGMANN
JULIE B. MARTIN
Office of the Legal Adviser
U.S. Department of State

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Subpoena in | ) |
| | ) |
| DISTRICT OF COLUMBIA | ) |
| v. | ) Miscellaneous No. 08-39 (RCL) |
| DESIREE ALI-FAIROOZ | ) |
| | ) |

**ORDER**

Upon consideration of the Secretary of State's motion to quash the subpoena and defendant Ali-Fairooz's cross-motion for remand to Superior Court, and the entire record herein, it is hereby

ORDERED that the motion to quash is GRANTED and it is further

ORDERED that the motion to remand is DENIED.

Date: _____
UNITED STATES DISTRICT COURT JUDGE